1

2

3

4

5

6

7

8           **UNITED STATES DISTRICT COURT**

9     **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11   MAURITTA D. WALLIS,          Case No. 2:19-cv-03448-JWH-Ex

12          Plaintiff,

13       v.                   **MEMORANDUM OF DECISION PURSUANT TO RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

14   GREYHOUND LINES, INC.,
FIRST TRANSIT, INC.,

15   FIRST GROUP AMERICA, INC., and
DOES 1 TO 100,

16

17          Defendants.

18

19

20

21

22

23

24

25

26

27

28

# I.  BACKGROUND

This action arises from the decision of Defendant Greyhound Lines, Inc., to terminate the employment of Plaintiff Mauritta Wallis.  Wallis, an African-American woman, worked for Greyhound for more than 20 years before Greyhound fired her in 2018.  Wallis asserts claims for relief for (1) wage-and-hour violations; (2) rest break violations; (3) meal break violations; (4) waiting time penalty; (5) unfair competition; (6) employment discrimination in violation of the Fair Employment and Housing Act, Cal. Gov't Code § 12940(a) ("FEHA"); and (7) racial harassment in violation of FEHA.[1]

On October 30, 2020, the Court dismissed Defendants First Transit, Inc. and FirstGroup America, Inc. from this action.[2]  The Court denied Greyhound's motion for summary judgment on January 19, 2021.[3]  The parties filed their respective trial briefs on May 31.[4]  On June 3, the Court commenced a seven-day bench trial.  On the fourth day of trial, the Court dismissed fictitiously named Defendants Does 1 to 100.[5]  Having considered the evidence, the arguments of the parties, and the record in this action, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

# II.  FINDINGS OF FACT

In bench trials, Rule 52(a) requires a court to "find the facts specially and state separately its conclusions of law thereon."  Fed. R. Civ. P. 52(a).  "One

---

[1]     *See* Compl. (the "Complaint") [ECF No. 1-2].  The Complaint's caption purports that Wallis asserts eight claims for relief, but the text of the Complaint includes only seven.

[2]     *See* Joint Stipulation to Dismiss First Transit, Inc. and FirstGroup America, Inc. [ECF No. 44].

[3]     *See* Order Denying Mot. for Summ. J. [ECF No. 60].  Unless otherwise noted, all dates are in 2021.

[4]     *See* Pl.'s Trial Br. [ECF No. 122]; Def.'s Trial Br. [ECF No. 123].

[5]     *See* Civil Minutes—Trial [ECF No. 131].

purpose behind Rule 52(a) is to aid the appellate court's understanding of the basis of the trial court's decision.  This purpose is achieved if the district court's findings are sufficient to indicate the factual basis for its ultimate conclusions." *Vance v. American Haw. Cruises, Inc.*, 789 F.2d 790, 792 (9th Cir. 1986).  The Court complies with those directives and sets forth its Findings of Fact as follows:[6]

**A.    Background**

1.    Greyhound is a provider of intercity bus transportation.  Greyhound operates a terminal in downtown Los Angeles (the "L.A. Terminal") that is open to the public.

2.    The L.A. Terminal is a unionized work location.  Greyhound's unionized employees have redress through their union and grievance procedures, and those employees are subject to the terms and conditions of the Collective Bargaining Agreement in place at that location.

3.    Wallis is an African-American woman who worked for Greyhound in the L.A. Terminal from 1994 until April 2018.  She began her employment with Greyhound as a ticket agent.  By 2015, Wallis served as a Service Lead Representative.

4.    Jorge Ochoa served as Wallis's immediate supervisor from 2013 until Wallis's termination.  Ochoa is a Hispanic man.  Ochoa had broad discretionary powers, and he exercised substantial discretionary authority at Greyhound.  For example, when unionized employees had employment related issues or disputes, the union representative took those concerns to Ochoa.

5.    In March 2014, Wallis filed a lawsuit (the "Previous Lawsuit") against Ochoa and Greyhound for, among other things, discrimination.  After

---

[6]    To the extent that any of the Findings of Fact herein are considered Conclusions of Law, they are adopted as such.  Likewise, to the extent that any of the Conclusions of Law in Part III are considered Findings of Fact, they are adopted as such.

-3-

approximately 16 weeks, that lawsuit was resolved through the Offer of Judgment procedure provided in Rule 68 of the Federal Rules of Civil Procedure.

6.     Wallis subsequently raised one complaint that, in retaliation for filing her Previous Lawsuit, she was not receiving the assignments that she wanted.  Greyhound investigated Wallis's complaint and found no corroboration for it.

**B.     Wallis's Termination**

7.     On January 30, 2018, a customer complained to Greyhound (the "Complaining Customer") regarding that customer's missing luggage.  The Complaining Customer further asserted that she had to pay an extra $20 to exchange her ticket to continue her travel.

8.     Greyhound investigated that incident and found that Wallis was the employee who demanded that the Complaining Customer pay an extra $20.  Greyhound also concluded that Wallis collected $20 in cash from the Complaining Customer but that Wallis failed to report her receipt of that $20 to Greyhound.

9.     Greyhound expanded its investigation and found several more instances in which Wallis collected money from customers but failed to report those transactions to Greyhound.  Greyhound possessed videotape evidence of those incidents.

10.     During Greyhound's investigation, Wallis's union represented her.

11.     Ultimately, Greyhound concluded that Wallis did not have a credible and consistent explanation for the above-described incidents.  On that ground, Greyhound terminated Wallis's employment.  At no point during Greyhound's investigation did Wallis complain to Greyhound that the investigation was improperly based upon her race, nor did she complain about any of the alleged wage-and-hour violations at issue in this lawsuit.

12.     Greyhound's investigation was thorough, and its conclusion that Wallis committed theft was reasonable and was based upon credible evidence.

**C.     Wage-and-Hour Issues**

13.     Throughout her tenure with Greyhound, Wallis recorded her own hours worked.  Wallis repeatedly confirmed the accuracy of the hours that she reported working.

14.     Greyhound paid Wallis for all of the hours that Wallis reported working.

15.     Wallis never complained to Greyhound about working off-the-clock at any time within the statute of limitations period governing her wage-and-hour claims in this action.

16.     Wallis served as a Shop Stewart at the L.A. terminal from 2013 until the termination of her employment.  As Shop Stewart, Wallis liaised between unionized employees and Ochoa when any employment-related issues or disputes arose regarding those employees.  While serving as Shop Stewart, Wallis frequently raised complaints on behalf of other unionized employees to Greyhound's management, including Ochoa.

17.     Wallis received Greyhound's employee handbook and other training.  Wallis was well aware of her ability to raise any complaints to Greyhound, including unpaid work time or missed or interrupted meal periods or rest breaks.

18.     Wallis routinely recorded, and Wallis was paid, overtime wages.

19.     Wallis made numerous complaints to Greyhound over the course of her employment with the company, thereby demonstrating that she was willing to advocate for herself.  None of Wallis's complaints during the relevant years was for unpaid overtime wages.

20.     Wallis did not present sufficient evidence to corroborate that she performed off-the-clock work.

21.     Wallis routinely took timely and complete rest breaks and meal periods.

22.     None of Wallis's complaints during the relevant years was for untimely, missed, or interrupted rest breaks or meal periods.

23.     Wallis did not file grievances with her union or with Greyhound for alleged unpaid wages, for meal period violations, or for rest break violations during the relevant time period.

**D.     Harassment**

24.     While Wallis worked under Ochoa, Ochoa and other employees used racial epithets regarding African-American employees.  For example, Kristine West—an African-American employee of Greyhound and a colleague of Wallis—once heard Ochoa say, "I don't understand this fucking nigger." Ochoa and other employees used racial epithets including "nigger," "nigger lover," "monkey," and "stupido Negra."

25.     Ochoa treated Wallis and West with suspicion, hostility, and undue harshness.  Ochoa treated Wallis and West more harshly than he treated employees who were not African-American.  Ochoa was more hostile to African-American employees (such as West and Wallis) and African-American customers than he was to other employees and customers.  Ochoa told employees and customers that Wallis and West were "problems."  Ochoa laughed when a customer called Wallis an "ugly old Black ass monkey."

26.     Ochoa's behavior caused West and Wallis to feel alienated and isolated at work.

27.     Wallis complained to union officials about the differential treatment of African-American employees at Greyhound, including the derogatory remarks directed at them.  Wallis made similar complaints to Greyhound management.

28.     Some of Wallis's interactions with Ochoa were so hostile that Wallis would leave work in tears.

29.     Despite Wallis's many complaints, Greyhound neither took appropriate corrective action nor properly investigated her complaints.

### III.  CONCLUSIONS OF LAW

The Court complies with Rule 52(a) by setting forth its Conclusions of Law as follows:

### A.     Discrimination Based upon Race

Wallis's sixth claim for relief is for racial discrimination in violation of the FEHA.  Cal. Gov't Code § 12940(a).  California has adopted the three-stage burden-shifting test for discrimination claims established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Sandell v. Taylor–Listug, Inc.*, 188 Cal. App. 4th 297, 307 (2010) (citing *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 354–56 (2000)).  That framework applies to wrongful termination claims based upon race discrimination.  *See Guz*, 24 Cal. 4th at 354–56; *Sandell*, 188 Cal. App. 4th at 307; *Nielsen v. Trofholz Techs., Inc.*, 750 F. Supp. 2d 1157, 1164 (E.D. Cal. 2010), *aff'd*, 470 F. App'x 647 (9th Cir. 2012).

Under the *McDonnell Douglas* burden-shifting test:

[A] plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision.  Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

*Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985) (citing *McDonnell Douglas*, 411 U.S. at 802–05).

1      "Although intermediate evidentiary burdens shift back and forth under

2  this framework, '[t]he ultimate burden of persuading the trier of fact that the

3  defendant intentionally discriminated against the plaintiff remains at all times

4  with the plaintiff.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143

5  (2000) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

6      Wallis has not met that burden.  Greyhound presented evidence of its

7  good faith investigation and termination of Wallis due to theft and dishonesty.

8  That investigation was thorough, and its conclusions were based upon

9  substantial evidence.  Wallis was supported by her union and was afforded due

10  process.  Accordingly, the Court finds in favor of Greyhound on Wallis's sixth

11  claim for relief.

12  **B.    Race-Based Harassment**

13      **1.    Liability**

14            **a.    Elements**

15      To establish a claim for harassment based upon race and gender under

16  FEHA, a plaintiff must prove all of the following:  (1) plaintiff was employed by

17  defendant; (2) plaintiff was subjected to harassing conduct because of race

18  and/or gender; (3) the harassing conduct was severe or pervasive; (4) a

19  reasonable person in plaintiff's circumstances would have considered the work

20  environment to be hostile, intimidating, offensive, oppressive, or abusive;

21  (5) plaintiff considered the work environment to be hostile, intimidating,

22  offensive, oppressive, or abusive; (6) a supervisor engaged in the conduct, or

23  that employer knew or should have known of the conduct and failed to take

24  immediate and appropriate corrective action; (7) plaintiff was harmed; and

25  (8) the conduct was a substantial factor in causing plaintiff's harm.  *See Lyle v.*

26  *Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (2006); *see also Fisher v. San*

27  *Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1989).  In addition, the

28  conduct at issue "must be both objectively and subjectively offensive . . . ."

1  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift*
2  *Sys., Inc.*, 510 U.S. 17, 21-22 (1993)).

3      To determine whether an environment was hostile or abusive, a court
4  must examine "the frequency of the discriminatory conduct; its severity;
5  whether it is physically threatening or humiliating, or a mere offensive
6  utterance; and whether it unreasonably interferes with an employee's work
7  performance." *Haley v. Cohen & Steers Cap. Mgmt., Inc.*, 871 F. Supp. 2d 944,
8  956 (N.D. Cal. 2012).  Harassment based upon race and gender is unlawful when
9  it is "so severe or pervasive that it created a work environment abusive to
10  employees because of their" race or gender.  *Harris*, 510 U.S. at 22.  The
11  California Supreme Court has held that, by implication, the FEHA "makes the
12  employer strictly liable for harassment by a supervisor." *State Dept. of Health*
13  *Servs. v. Superior Ct.*, 31 Cal. 4th 1026, 1041 (2003).

14      Wallis proved that she was unlawfully harassed in violation of FEHA.  As
15  discussed in the Findings of Fact, Wallis was a Greyhound employee who was
16  harassed due to her race.  The Court finds that a reasonable African-American
17  person who was subjected to the racist language to which Wallis was subjected
18  would have considered the work environment to be hostile, oppressive, and
19  abusive.  The evidence also establishes that Wallis herself felt this way.  Wallis's
20  supervisor was among the participants in the harassment, and Greyhound knew
21  or should have known about the conduct.  Greyhound failed to take the
22  appropriate corrective action, and Wallis suffered as a result.

23          **b.    Continuing Violation Doctrine**
24      In addition, under the continuing violation doctrine, Wallis is not barred
25  from recovering for the unlawful discriminatory and harassing conduct that
26  occurred outside of the limitations period.  The continuing violation doctrine
27  provides that "an employer is liable for actions that take place outside the
28  limitations period if these actions are sufficiently linked to unlawful conduct that

1 occurred within the limitations period." *Blue Fountain Pools & Spas Inc. v.*
2 *Superior Ct. of San Bernardino Cnty.*, 53 Cal. App. 5th 239, 250 (2020) (quoting
3 *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1056 (2005)).

4      Wallis proved that discriminatory and harassing conduct occurred within
5 the applicable limitations period.  Wallis further proved that she experienced the
6 alleged discriminatory and harassing conduct continuously from around 2013
7 until her termination.  That evidence is sufficient to show the requisite
8 continuous conduct for the continuing violation doctrine to apply.  *See id.*;
9 *Birchstein v. New United Motor Mfg., Inc.*, 92 Cal. App. 4th 994, 1001–02, 1006
10 (2001).  Accordingly, the Court finds Greyhound liable on Wallis's seventh
11 claim for relief.

12      **2.**    **Damages Award**
13           **a.**    **Compensatory Damages**

14      In actions for harassment under FEHA, "the plaintiff may recover those
15 damages generally available in noncontractual actions."  *State Dep't of Health*
16 *Servs. v. Superior Ct.*, 31 Cal. 4th 1026, 1042 (2003) (quotation omitted).
17 Specifically, a court "may award unlimited compensatory and punitive
18 damages."  *Murillo v. Rite Stuff Foods, Inc.*, 65 Cal. App. 4th 833, 842 (1998).  A
19 plaintiff may collect compensatory damages for emotional distress brought on by
20 an employer's FEHA violations.  *See Taylor v. Trees, Inc.*, 58 F. Supp. 3d 1092,
21 1103 (E.D. Cal. 2014) (citing *Peralta Cmty. Coll. Dist. v. Fair Emp. & Hous. Com.*,
22 52 Cal. 3d 40, 48 (1990)).  "Emotional distress [refers to] the full gamut of
23 intangible mental suffering, including not only physical pain, but also fright,
24 nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity,
25 embarrassment, apprehension, terror or ordeal."  *Peralta*, 52 Cal. 3d at 48 n.4.
26 To recover compensatory damages for emotional distress, "there is no
27 requirement that the 'emotional distress' be severe."  *Taylor*, 58 F. Supp. 3d at
28 1103.

1    The Court concludes that Wallis is entitled to compensatory damages for
2    emotional distress.  The finder of facts "is entrusted with vast discretion in
3    determining the amount of damages to be awarded," so long as recovery is not
4    grossly proportionate to the harm at issue.  *Bertero v. Nat'l Gen. Corp.*, 13 Cal. 3d
5    43, 64 (1974).  Greyhound provides the Court with no guidance regarding how
6    to calculate compensatory damages.  Wallis cites several cases, but those cases
7    involve instances in which the harassment victims developed mental disorders as
8    a result of the harassment.[7]  *See Bihun v. AT&T Info. Sys., Inc.*, 13 Cal. App. 4th
9    976, 997 (1993), *as modified on denial of reh'g* (Mar. 25, 1993), *and disapproved of
10   on other grounds by Lakin v. Watkins Associated Indus.*, 6 Cal. 4th 644 (1993)
11   (upholding $662,000 award for emotional damages in sexual harassment case in
12   which harassment led to victim developing an adjustment disorder); *Watson v.
13   Dep't of Rehab.*, 212 Cal. App. 3d 1271, 1294 (1989) (upholding $1,102,000
14   award in racial harassment case in which victim suffered emotional breakdown
15   in response to harassment).

16       The range of compensatory damages available to harassment victims is
17   vast.  In contrast to the cases that Wallis cites, for example, the Court observes
18   that in 1990 the California Supreme Court surveyed various dollar amounts
19   awarded by the Fair Employment and Housing Commission for compensatory
20   damages due to harassment in violation of FEHA.  *See Peralta*, 52 Cal. 3d at 49
21   n.5.  Those awards ranged from $5,000 to $135,000.  *Id.*; *see also Weeks v. Baker
22   & McKenzie*, 63 Cal. App. 4th 1128, 1137 (1998), *as modified on denial of reh'g*
23   (June 2, 1998) (awarding sexual harassment victim $50,000 from the harasser
24   and $50,000 from the employer).

---

[7]    *See* Pl.'s Proposed Findings of Fact and Conclusions of Law ("PFL")
[ECF No. 153] 43:28-44:6.

In her PFL, Wallis highlights how the harassment caused her general "emotional distress."[8] The Court has expressly found that Wallis's interactions with Ochoa often left Wallis in tears.[9] But no evidence suggests that Wallis was harmed to the same extent as the harassment victims in *Bihun* or *Watson*. At the same time, the harassment Wallis that endured in this case was extreme and outrageous. Accordingly, the Court concludes that an award to Wallis of $125,000 in compensatory damages for emotional distress is appropriate.

### b. Punitive Damages

A plaintiff may recover punitive damages when "defendant has been guilty of oppression, fraud, or malice . . . ." Cal. Civ. Code § 3294(a). Punitive damages are properly awarded when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate." *Wysinger v. Auto. Club of S. California*, 157 Cal. App. 4th 413, 428 (2007) (quotation omitted). A corporate defendant is only liable for punitive damages if it had "advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice" came from "an officer, director, or managing agent of the corporation." Cal. Civ. Code § 3294. "[S]upervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation could be managing agents." *Wysinger*, 157 Cal. App. 4th at 428; *see also Major v. W. Home Ins. Co.*, 169 Cal. App. 4th 1197, 1221 (2009), *as modified on denial of reh'g* (Jan. 30, 2009) ("supervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation could be managing agents"). The Court concludes that Ochoa was such a supervisor and that he acted with malice in his harassment of Wallis.

---

[8]     *Id.* at 33:5.

[9]     *See supra* Finding 28.

When calculating punitive damages, "[c]ourts often impose 'sanctions of double, treble and quadruple damages to deter and punish.'" *Wysinger*, 157 Cal. App. 4th at 429 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)). "Such single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with higher ratios." *Id.* (internal quotations and alterations omitted). To determine which multiplier to use, the Court must consider the "degree of reprehensibility of the defendant's conduct." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 713 (2009), *as modified* (Feb. 10, 2010). To determine reprehensibility, courts must consider whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm*, 538 U.S. at 419.

Here, the harassment that Wallis endured was neither physical nor economic; it evinced little if any indifference to Wallis's ***physical*** health or safety; it did take place over the course of repeated incidents; and the harm was a result of intentional malice. Considering the balance of those factors, the Court finds that a multiplier of two is sufficient to deter and punish Greyhound from sanctioning future racial harassment. Accordingly, the Court awards Wallis an additional $250,000 in punitive damages.

## C.    Unpaid Overtime Compensation

"Where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the

employer's failure to pay for the overtime hours is not a violation . . . ." *Jong v. Kaiser Found. Health Plan, Inc.*, 226 Cal. App. 4th 391, 395 (2014).  Here, Wallis failed to prove either that she was not paid for overtime work or that she did not prevent Greyhound from knowing about her uncompensated overtime work.  Accordingly, the Court finds in favor of Greyhound on Wallis's first claim for relief.

**D.    Meal and Rest Period Violations**

California law prohibits employers from requiring employees "to work during a meal or rest or recovery period . . . ."  Cal. Lab. Code § 226.7. California law expressly provides that:

> [a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Cal. Lab. Code § 512(a).  An employer satisfies that statute's requirements when it "relinquishes control over [employees'] activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break . . . ." *Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58, 67 (2021) (internal quotation omitted).  While an employer must not impede or discourage an employee from taking his or her break free of work, that employer is "not obligated to police

1    meal breaks and ensure no work thereafter is performed."  *Id.* (internal

2    quotation omitted).  Here, Wallis failed to prove that Greyhound violated those

3    requirements.  Accordingly, the Court finds in favor of Greyhound on Wallis's

4    second and third claims for relief.

5    **E.    Waiting Time Penalty**

6          "If an employer discharges an employee, the wages earned and unpaid at

7    the time of discharge are due and payable immediately."  Cal. Lab. Code § 201.

8    "If an employer ***willfully*** fails" to pay a discharged employee in accordance with

9    California law, "the wages of the employee shall continue as a penalty from the

10   due date thereof at the same rate until paid or until an action therefor is

11   commenced; but the wages shall not continue for more than 30 days."

12   Cal. Lab. Code § 203(a) (emphasis added).  To be considered "willful," an

13   "employer's refusal to pay need not be based on a deliberate evil purpose to

14   defraud workmen of wages which the employer knows to be due."  *Kao v.*

15   *Holiday*, 12 Cal. App. 5th 947, 962–63 (2017) (internal quotation omitted).

16   Instead, "'[w]illful' merely means that the employer intentionally failed or

17   refused to perform an act which was required to be done."  *Id.* at 963 (quotations

18   and citations omitted) (emphasis omitted).  However, "[a] ***good faith dispute***

19   ***that any wages are due will preclude the imposition of waiting time penalties***

20   under Labor Code Section 203."  *Id.* at 963 (quotations and citations omitted)

21   (emphasis added).  Wallis first raised her allegations for additional compensation

22   by way of this lawsuit.  The Court finds that this is a good faith dispute, and that

23   Greyhound did not willfully fail to pay Wallis any money owed to her.

24   Accordingly, the Court finds in favor of Greyhound on Wallis's fourth claim for

25   relief.

26   **F.    Unfair Competition**

27         California's Unfair Competition Law (the "UCL") prohibits business

28   acts that are "unlawful, unfair, or fraudulent . . . ."  Cal. Bus. & Prof. Code

§ 17200.  A business act violates the unlawful prong of the UCL if it "is forbidden by law."  *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1474 (2006).  Wallis alleges that Greyhound violated the UCL by failing to pay the wages it owed her.[10]  Wallis failed to prove that Greyhound unlawfully failed to pay wages it owed her.  Accordingly, the Court finds in favor of Greyhound on Wallis's fifth claim for relief.

**IT IS SO ORDERED.**

Dated: March 30, 2022

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[10]    Complaint ¶¶ 29-31.